UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARRIER CORPORATION,<br>    Plaintiff | )<br>)<br>) |
| vs. | )<br>) |
| REPLY! INC.,<br>    Defendant | )<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, Carrier Corporation ("Carrier"), by its undersigned attorneys, sets forth its Complaint against the Defendant, Reply! Inc. ("Reply!"), as follows:

**I. INTRODUCTION**

1. Carrier seeks redress for willful and systematic violation of its trademark rights by Reply!, which operates a web based business intended to generate leads for various types of businesses in Massachusetts and throughout the country. The Defendant achieves this end by willfully and improperly usurping Carrier's name and registered trademark, and the goodwill associated therewith. On information and belief, Reply! purchased "Carrier" as a "search term" from various internet search engines, in order to trigger sponsored links to its own website, www.reply.com. In addition, it has incorporated the term "Carrier" into another domain name that it purchased, www.carrier.reply.com, and has featured, and continues to feature, the CARRIER mark prominently on its website. Reply! has no affiliation with Carrier and undertook such actions without requesting or obtaining Carrier's consent. Reply!'s willful, improper and infringing conduct has caused damage to Carrier.

**II. PARTIES**

2. The Plaintiff, Carrier, is a duly organized Delaware corporation, which is registered to do business in Massachusetts, and which has a usual place of business at One Carrier Place, Farmington,

Connecticut.

3. The Defendant, Reply!, is a duly organized Delaware corporation with a principal place of business at 12667 Alcosta Boulevard, Suite 200, San Ramon, California.

### III. JURISDICTION AND VENUE

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1338. In addition, supplemental jurisdiction over related state law claims is conferred upon this Court by 28 U.S.C. §1367(a).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) because Reply! "resides" in this district within the meaning of 28 U.S.C. §1391(c) insofar as it is subject to personal jurisdiction in this district. Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the actions and/or omissions giving rise to the claims in this action occurred in this district.

6. This Court has personal jurisdiction over Reply! pursuant to Mass. Gen. Laws, c. 223A, §§3(a), (b), (c), and (d) because this action arises: (a) from Reply!'s transaction of business in Massachusetts; (b) from Reply!'s contracting to supply services or things in Massachusetts; (c) from Reply!'s causing tortious injury by acts or omissions within Massachusetts; and/or (d) from Reply!'s causing tortious injury by acts or omissions outside of Massachusetts while regularly doing or soliciting business, or engaging in a persistent course of conduct, or deriving substantial revenue from goods and/or services used or consumed, in Massachusetts.

7. The particular conduct triggering such jurisdiction includes, among other things:

    (a) Reply!'s operation of a highly interactive website through which it solicits and conducts business, including business in Massachusetts;

    (b) Reply!'s listing of Massachusetts contractors on its website;

(c) Reply!'s contracting with entities which do business in Massachusetts; and

(d) Reply!'s intentional use of the CARRIER mark, without permission, to promote goods and services in Massachusetts.

8. By intentionally using Carrier's registered trademark, Reply!'s conduct is intended to cause harm to Carrier, a corporation which does significant business in the Commonwealth of Massachusetts.

9. Through such conduct, Reply! has purposefully availed itself of the privileges of conducting business in the Commonwealth of Massachusetts, and, when engaging in such conduct, should reasonably have perceived that it would be subjected to this Court's jurisdiction.

## IV. FACTUAL BACKGROUND

A. **Carrier and the CARRIER Mark**

10. Founded by Willis Carrier, who is credited with inventing modern air conditioning in 1902, Carrier is one of the world's largest manufacturers and distributors of heating, ventilating and air conditioning systems.

11. All of Carrier's heating, ventilating and air conditioning systems and components are manufactured in accordance with strict quality control standards, which have enabled Carrier to establish and maintain, over many years, a reputation among commercial and residential consumers for quality and consistency.

12. Carrier conducts business throughout the United States and globally.

13. Carrier owns the following registrations for the CARRIER mark: U.S. Trademark Reg. No. 1,712,227 (Registration attached hereto as Exhibit 1); U.S. Trademark Reg. No. 1,804,331 (Registration attached hereto as Exhibit 2); U.S. Trademark Reg. No. 2,094,163 (Registration attached hereto as Exhibit 3) ; and U.S. Trademark Reg. No. 2,717,506 (Registration attached hereto as Exhibit 4)

for the CARRIER trademark.

14. All of those CARRIER trademarks have become incontestable as a matter of law.

15. Carrier has developed substantial goodwill and public recognition as a result of its continuous use of the CARRIER mark for many years.

16. Carrier displays its CARRIER mark on its products, and prominently features that mark on its website at www.carrier.com and on promotional materials which it distributes throughout the United States.

17. As a result of Carrier's excellent reputation and investment in its brand, CARRIER has become a leading brand of heating, ventilation and air conditioning systems sold in the United States and globally and the CARRIER mark has become famous.

18. Carrier has invested substantial time, effort and money in the promotion and protection of its CARRIER mark and considers that mark to be among its most important and valuable assets.

19. Through extensive and continuous sales, promotion and use, the CARRIER mark has come to be associated with Carrier and identifies Carrier as the source of the goods and services offered in connection with that mark.

**B.     Reply! and its Misconduct**

20. Reply! operates a web based business, the primary objective of which is to generate leads for various types of other businesses throughout the country, including in Massachusetts.

21. On information and belief, businesses pay a fee to Reply! in exchange for sales leads.

22. Home improvement contractors, for example, pay Reply! a fee to generate leads from homeowners who are interested in having renovation work done at their home.

23. Reply! generates the leads for such contractors by attracting homeowners who are contemplating home improvements to its website at www.reply.com. Once on that website, homeowners

are directed to web pages where they are prompted to enter their name and other information concerning the scope of their potential home improvement project. That information is apparently then forwarded to particular home improvement contractors who use it to contact respective homeowners

24. In order to generate leads for subscribing contractors, Reply! has used and continues to use the Carrier name and the CARRIER mark without Carrier's permission.

25. On information and belief, Reply! has purchased the search term "Carrier" from operators of search engines sites including webcrawler.com, yahoo.com and google.com.

26. As a result, Internet users who wish to search for Carrier products or Carrier websites and enter the word "Carrier" as a search term bring up, among legitimate search results, a sponsored link captioned "Carrier" with text which reads "Find Best Deals on Carrier Units". (Shaded Result at Top of Search Results Page, attached hereto as Exhibit 5).

27. Carrier is not affiliated in any way with the sponsored link and did not authorize Reply! to use "Carrier" as a search term.

28. The sponsored link lists a web address of carrier.reply.com. (Exhibit 5).

29. Carrier is not affiliated in any way with carrier.reply.com and did not authorize Reply! to use Carrier in its domain name.

30. Clicking anywhere on the sponsored link brings the internet user to a www.reply.com webpage. (Exhibit 2).

31. On that webpage, Reply! prominently displays the CARRIER mark and logo and invites internet users to "Compare Carrier HVAC Prices for Free". (Exhibit 6).

32. Carrier has not authorized Reply! to use or display, in any way, its CARRIER mark and logo.

33. Under the CARRIER mark and logo on that page are photos of a thermostat, a furnace,

and a heat pump. (Exhibit 6).

34. None of the products displayed on that page are Carrier products.

35. Further clicks do not bring the internet user to any page where he/she may obtain Carrier estimates, compare Carrier prices, or buy Carrier products. (Page prompting internet user to enter contact information attached hereto as Exhibit 7).

36. Rather, additional clicks ultimately serve only to connect the internet user to contracting companies which are not affiliated with Carrier in any way. (Exhibit 7; List of Massachusetts based contracting companies attached hereto as Exhibit 8).

37. Reply!'s website does not permit consumers to compare Carrier products and/or services to those of any other companies.

38. Reply's use of "Carrier" as a search term to trigger sponsored links to www.reply.com, its use of www.carrier.reply.com as a domain name, and its use of the CARRIER mark on its web pages is intended to divert internet users searching for Carrier products and services from legitimate Carrier websites like www.carrier.com .

39. As such, Reply! willfully misappropriates the goodwill that Carrier has built upon its trademark.

40. Reply!'s use of the CARRIER trademark to divert internet users to its website and to contractors who have no affiliation with Carrier is likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers of Carrier products and services.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

41. Carrier repeats and realleges the allegations contained in paragraphs 1-40 of its Complaint as if fully set forth herein.

42. The trademark, CARRIER, which is used in connection with Carrier's heating, ventilation

and air conditioning products and services, has been, and will continue to be, known throughout the United States and the world as identifying and distinguishing Carrier's business.

43. Carrier engages in interstate activities designed to promote the goods and services it sells as well as the goodwill associated with its trademark, throughout the United States and the world.

44. Reply! offers for sale, distributes, and/or advertises goods and services to consumers in or affecting interstate commerce, and provides information about such products and/or services in or affecting interstate commerce.

45. Without authorization or consent of Carrier, Reply! has used, and continues to use, the CARRIER mark in connection with the sale, distribution and/or advertisement of goods and services.

46. By using the CARRIER mark, and by selling, offering for sale, distributing, and/or advertising goods and/or services to the general public in connection with such mark, for profit and without Carrier's authorization, Reply! is depriving Carrier of its exclusive right to control, and benefit from, its trademark.

47. If permitted to continue, Reply!'s actions will nullify Carrier's right to the exclusive use of its mark, free from infringement, and will have a substantial and adverse effect on Carrier's existing and projected interstate business of heating, ventilating and air conditioning identified by its trademark.

48. Reply!'s use of the CARRIER trademark in connection with the sale, distribution and advertising of its products, without the Plaintiff's permission or authority, has caused actual confusion and is likely to continue to cause confusion, to cause mistake, and to deceive, to the detriment of Carrier and its customers and potential customers. Carrier has been, and continues to be, damaged by Reply!'s activities and conduct.

49. Reply! has profited thereby and, unless its conduct is enjoined, Carrier's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by

money damages.

50. Accordingly, Carrier is entitled to injunctive relief pursuant to 15. U.S.C. §1116(a).

## COUNT II – FALSE DESIGNATION OF ORIGIN AND FALSE REPRESENTATION (15 U.S.C. §1125(a))

51. Carrier repeats and realleges the allegations contained in paragraphs 1-50 of its Complaint as if fully set forth herein.

52. Reply!'s activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because they have misled and are likely to continue to mislead the public into believing that Reply!'s products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Carrier and/or that businesses and contractors who subscribe to Reply!'s lead generation service are sponsored, authorized, approved or sanctioned by Carrier.

53. Reply!'s acts of false designation of origin, false representation and false advertising have caused Carrier to sustain monetary damages, loss and injury in an amount to be determined at trial.

54. Reply!'s acts of false designation of origin, false representation and false advertising, unless enjoined by this Court, will continue to cause Carrier to sustain irreparable damage, loss and injury, for which it has no adequate remedy at law.

## COUNT III – DILUTION – 15 U.S.C. §1125(c)

55. The Plaintiff repeats and realleges the allegations contained in paragraphs 1-54 of its Complaint as if fully set forth herein.

56. As described above, Carrier owns valid and existing rights in the CARRIER mark.

57. Through consistent and continued use, product promotion, and consumer and industry recognition, Carrier has developed the CARRIER mark to the point where it is famous.

58. Reply! did not begin using the confusingly similar mark in commerce until after the

CARRIER mark became famous.

59. Upon information and belief, Reply! has used the CARRIER mark to take advantage of the goodwill and reputation established in the CARRIER mark and to dilute the strength of the CARRIER mark.

60. Reply!'s use of the CARRIER mark is likely to cause dilution of the distinctive qualities of the CARRIER mark in violation of 15 U.S.C. §1125(c).

61. As a direct and proximate result of Reply!'s violations of 15 U.S.C. §1125(c), Carrier will continue to be damaged.

62. Upon information and belief, Reply! has realized, and continues to realize, substantial revenues, profits and other benefits rightfully belonging to Carrier as a result of its wrongful conduct.

63. Reply!'s conduct is causing and will continue to cause Carrier to suffer irreparable harm and, unless Reply! is restrained, Carrier will continue to be so damaged, because it has no adequate remedy of law.

## COUNT IV – CYBERPIRACY PREVENTION – 15 U.S.C. §1125(d)

64. Carrier repeats and realleges the allegations contained in paragraphs 1-63 of its Complaint as if fully set forth herein.

65. As described above, Carrier owns valid and existing rights in the CARRIER mark.

66. Reply!, in bad faith, intentionally set out to profit from the CARRIER mark by adopting and using an internet domain name – www.carrier.reply.com – which is confusingly similar to or dilutive of that famous mark.

67. Reply!'s continued use of such domain name continues to cause damage to Carrier.

68. Such damage will continue until Reply! is ordered to forfeit or cancel such domain name and/or ordered to transfer the domain name to Carrier.

## COUNT V – COMMON LAW TRADEMARK INFRINGEMENT AND TRADE MEANING INFRINGEMENT

69. Carrier repeats and realleges the allegations contained in paragraphs 1-68 of its Complaint as if fully set forth herein.

70. The Plaintiff's ownership and use of the CARRIER mark predates the use by Reply! of that same mark.

71. Reply!'s use in commerce of the CARRIER mark constitutes common law trademark infringement in that it is without Carrier's consent and has created actual confusion, and is likely to continue to create confusion, as to source and origin.

72. As a direct and proximate result of Reply!'s common law trademark infringement, Carrier has been damaged and will continue to be damaged.

73. Upon information and belief, Reply! has realized, and continues to realize, substantial revenues, profits and other benefits rightfully belonging to Carrier as a result of its infringement.

74. Reply!'s actions have had and will continue to have the effect of nullifying Carrier's right to exclusive use of its trademarks free from infringement.

75. Carrier therefore seeks actual damages as well as disgorgement of Reply!'s profits from the use of Carrier's trademark.

76. Reply! has profited thereby, and, unless its conduct is enjoined, Carrier's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by monetary damages.

77. Accordingly, Carrier also seeks injunctive relief to restrain Reply!'s use of its trademark or any marks confusingly similar to its CARRIER mark.

## COUNT VI – UNJUST ENRICHMENT

78. Carrier repeats and realleges the allegations contained in paragraphs 1-77 of its Complaint

as if fully set forth herein.

79. Reply! has usurped for itself revenues and property rights belonging to Carrier for the purposes of enhancing the commercial value of its own business.

80. As a direct and proximate result of its unlawful and improper acts, Reply! has been unjustly enriched and Carrier has suffered, and will continue to suffer, loss of profits by virtue of Reply!'s conduct.

81. By reason of the foregoing, Carrier has been, and will continue to be irreparably harmed and damaged by Reply!'s conduct unless such conduct is enjoined by this Court.

## COUNT VII – CONVERSION

82. Carrier repeats and realleges the allegations contained in paragraphs 1-81 of its Complaint as if fully set forth herein.

83. Reply! exercised dominion or control over Carrier's trademark without authorization and without the legal right to do so.

84. As a direct and proximate result of Reply!'s intentional and malicious conversion of Carrier's trade names and/or trademarks, Carrier has suffered monetary damages.

85. By reason of the foregoing, Carrier has been, and will continue to be, irreparably harmed and damaged by Reply!s conduct unless such conduct is enjoined by this Court.

## COUNT VIII– UNFAIR OR DECEPTIVE ACTS AND PRACTICES (MASS. GEN. LAWS c. 93A)

86. Carrier repeats and realleges the allegations contained in paragraphs 1-85 of its Complaint as if fully set forth herein.

87. Carrier and Reply! are engaged in the conduct of trade or commerce within the meaning of Chapter 93A of the Massachusetts General Laws.

88. The foregoing conduct by Reply! constitutes unfair or deceptive acts and practices within

the meaning of Chapter 93A.

89.     Through the unfair acts and practices described above, Carrier has been, and continues to be, damaged by Reply!.

90.     Reply! has profited thereby, and unless its conduct is enjoined, Carrier will continue to suffer irreparable injury that cannot adequately be calculated or compensated by monetary damages.

91.     Accordingly, Carrier seeks injunctive relief pursuant to Section 11 of Chapter 93A of the Massachusetts General Laws.

92.     By using Carrier's CARRIER mark in connection with the sale, offering for sale, and/or advertising of goods and/or services to the general public, Reply! has violated Carrier's rights.

93.     Reply's actions were knowing and willful.

94.     Accordingly, Carrier is entitled to judgment in an amount equal to three times its damages, together with reasonable attorney's fees, pursuant to Mass. Gen. Laws c. 93A §11.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Carrier Corporation, requests entry of judgment and an order in its favor against the Defendant, Reply! Inc., on all claims as follows:

(a)     For a preliminary and thereafter a permanent injunction against the Defendant and its agents, servants, employees and attorneys and those persons acting in concert or participation with them who receive actual notice of the Order by personal service or otherwise:

  1.     Restraining the Defendant from using "CARRIER", (however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in combination with any word or words, and whether used in caption, text, orally or otherwise);

2. Restraining the Defendant from utilizing "CARRIER" or other terms confusing similar to "CARRIER" anywhere on any website operated by or on its behalf, including in metatags;

3. Restraining the Defendant from using "CARRIER" or any other mark or designation confusingly similar thereto or a colorable imitation thereof in connection with the promotion, advertising, offering, manufacturing, distributing or selling of its products and services;

4. Restraining the Defendant from using "Carrier" as a search term;

5. Restraining the Defendant from using the website and domain name www.carrier.reply.com and any other website and domain name including the term "Carrier".

(b) Finding that the Defendant has directly infringed the Plaintiff's trade names and trademarks in violation of 15 U.S.C. §1125(a);

(c) Finding that the Defendant's infringement of the Plaintiff's trade names and trademarks was willful, intentional and malicious;

(d) Permanently enjoining the Defendant, its agents, servants, employees and participants with them who receive actual notice of such Order by personal service or otherwise, from directly infringing and from inducing infringement of the trade names and marks of the Plaintiff, including CARRIER and any terms confusingly similar thereto;

(e) Ordering the Defendant to cancel all contracts and/or other arrangements that it has with search engines to use "Carrier" as a search term;

(f) Finding that the Defendant violated 15 U.S.C. §1125(d) and ordering the Defendant to cancel and forfeit the domain name, www.carrier.reply.com or alternatively ordering it to

transfer such domain name to the Plaintiff;

(g) Finding that this case is "exceptional" within the meaning of 15 U.S.C. §1117;

(h) Awarding the Plaintiff the damages to which it is entitled due to the Defendant's actions and infringement of the Plaintiff's trade names and trademarks and trebling such damages for the deliberate and willful nature of the infringement, and awarding a pre-judgment and post-judgment interest thereon;

(i) Finding that the amount of damages awarded or recovered based on profits is inadequate and awarding the Plaintiff three times such damages pursuant to 15 U.S.C. §1117(a);

(j) Alternatively, for the Defendant's violation of 15 U.S.C. §1125(d), awarding the Plaintiff statutory damages pursuant to 15 U.S.C. §1117(d) in an amount of $100,000.00;

(k) Awarding the Plaintiff its costs and expenses herein and its reasonable attorney's fees under 15 U.S.C. §1117;

(l) Finding that the Defendant has committed acts of unfair competition in violation of Lanham Act and Massachusetts common law and that the Defendant has diluted the Plaintiff's trade name and trademarks;

(m) Awarding the Plaintiff the damages to which it is entitled due to the Defendant's infringement and dilution of Plaintiff's trademarks, unfair competition, and awarding interest thereon and awarding pre and post-judgment interest thereon;

(n) Ordering an equitable accounting to determine the Defendant's profits resulting from its acts of trademark infringement, dilution, and unfair competition, and that such profits be paid to the Plaintiff as an equitable remedy;

(p) Awarding attorney's fees, reasonable costs, and treble damages pursuant to M.G.L. c. 93A, § 11;

(q)  Ordering the Defendant to destroy, and to certify to the Plaintiff and the Court, the destruction of all materials in its possession, custody or control which bear the designations CARRIER or www.carrier.reply.com or any other confusingly similar mark;

(r)  Ordering the Defendant to remove the word "Carrier" from its website, wherever it appears thereon, including in metatags;

(s)  Directing the Defendant to file with the Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which the Defendant has complied with the injunction.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

THE PLAINTIFF,
CARRIER CORPORATION

Date: July 1, 2011

By _____
Patrick J. Markey, Esq. of
O'Shea Getz P.C.
1500 Main Street, Suite 912
Springfield, Massachusetts 01115
Phone (413) 731-3100
Fax (413) 731-3101
BBO No.: 563542

CERTIFICATE OF SERVICE

I, Patrick J. Markey, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this 1st day of July, 2011.

_____
Patrick J. Markey, Esq.